# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| TROY H., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | No. ED CV 18-00322-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Troy H. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI").[1] The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff filed an application for SSI on December 18, 2013 alleging disability commencing January 1, 2011. See Dkt. 16, Administrative Record ("AR") 235-40. After being denied initially and on reconsideration, Plaintiff

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

requested a hearing before an Administrative Law Judge ("ALJ"). See AR 167-87. A hearing was held on May 4, 2016, at which Plaintiff and an impartial vocational expert ("VE") testified. See AR 37-68.

On August 31, 2016, the ALJ issued a written decision finding Plaintiff ineligible for disability benefits. See AR 16-36. The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, carpal tunnel syndrome in the left wrist, status post left carpal tunnel release, tendonitis in the left wrist with a history of fracture, obesity, affective disorder, anxiety disorder, and post-traumatic stress disorder. See AR 22. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk for 6 hours in an 8-hour workday, but requires a cane for ambulation. He can sit for 6 hours in an 8-hour workday; however, [Plaintiff] would require a sit/stand option alternating between sitting and standing no more often than every 30 minutes. [Plaintiff] can frequently perform handling and fingering with his left upper extremity. He can occasionally perform postural activities such [sic] climbing stairs, balancing, stooping, kneeling, crouching and crawling, but he can never climb ladders, ropes or scaffolds. [Plaintiff] cannot be exposed to unprotected heights. He can occasionally use vibrating hand tools. Additionally, [Plaintiff] is limited to simple, routine and repetitive tasks with no public contact and only incidental contact with co-workers.

AR 24. The ALJ determined that Plaintiff was unable to perform his past relevant work, but could perform jobs that exist in significant numbers in the national economy, such as assembler I (DOT 706.684-022), electronics worker

(DOT 726.687-010), and office helper (DOT 239.567-010). See AR 30. Consequently, the ALJ concluded that Plaintiff was not disabled. See AR 31.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether the ALJ erred in (1) determining that Plaintiff could perform alternative work and (2) discrediting Plaintiff's subjective symptom testimony. See Dkt. 20, Joint Statement ("JS") at 4.

### A. Whether Plaintiff Could Perform Alternative Work

Plaintiff argues that the ALJ's step-five determination that Plaintiff could perform alternative work is not supported by substantial evidence. See JS at 5-11. Specifically, Plaintiff contends that based on the ALJ's RFC determination, he could not perform the work of assembler I or electronics worker because he was limited to occasional use of vibratory tools, and could not perform the work of assembler I or office helper because he was limited to incidental contact with coworkers. See id.

At step five of the disability determination, the ALJ has the burden of establishing that the claimant can perform alternative jobs that exist in substantial numbers in the national economy. See Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). "[T]he best source for how a job is generally performed is usually the [DOT]." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). Should an "apparent or obvious" conflict arise between a VE's testimony regarding the claimant's ability to perform alternative jobs and the DOT's description of those jobs, the ALJ must ask the VE "to reconcile the conflict" and must determine whether the VE's explanation is reasonable before relying on that testimony. See Guiterrez v. Colvin, 844 F.3d 804, 807-08 (9th Cir. 2016).

With respect to the office helper position, Plaintiff contends the ALJ failed to identify or resolve the conflict between his RFC limiting him to "only incidental contact with co-workers" and the DOT's requirement that an office helper "[d]elivers oral or written messages." JS at 9-11. The Court finds that there is no actual or apparent conflict, and even if a conflict did exist, the ALJ sufficiently explored it with the VE.

According to the DOT, the duties of an office helper may include: furnishing other workers with clerical supplies; distributing and collecting mail; delivering oral or written messages; delivering items to other business establishments; delivering mail, messages, documents and packages between departments of establishment; and delivering stock certificates and bonds within and between stock brokerage offices. See DOT 239.567-010, 1991 WL 672232. Nothing in the DOT description suggests that communication with coworkers is necessarily part of the job. In fact, the DOT describes the "Speaking-Signaling" component of the job as "Not Significant." Id.

While Plaintiff argues that his limitations conflict with the office helper position as described by the Occupational Information Network ("O*Net"), Plaintiff waived this argument by failing to raise it before the agency. See Shaibi v. Berryhill, 883 F.3d 1102, 1109-10 (9th Cir. 2017) (holding that challenges based on alleged conflict with alternative job information gleaned from alternative sources will be waived if not raised during the administrative proceeding). In any event, the ALJ had no obligation to sua sponte investigate possible conflicts between the VE's testimony and non-DOT materials such as the O*Net. See id.

Moreover, "it's important to keep in mind that the [DOT] refers to 'occupations,' not to specific jobs." Gutierrez, 844 F.3d at 807. "'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" Id. (citing

SSR 00-4P, 2000 WL 1898704, at *2-3). Consequently, "not all potential conflicts between an expert's job suitability recommendation and the [DOT]'s listings of 'maximum requirements' for an occupation will be apparent or obvious." Id. at 807-08. Responding to the ALJ's hypothetical question that specifically accounted for Plaintiff's limitations, the VE reduced the number of office helper jobs to 55,400 nationally, an erosion factor of 50 percent. See AR 64 ("The reason for a 50 percent erosion is I made a – eroded out those jobs which would exceed the co-worker contact that you mentioned – in the hypothetical.") (emphasis added). The ALJ was "entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements,'" Gutierrez, 844 F.3d at 809, and correctly did so here.

Because the ALJ properly found that Plaintiff could perform the office helper job, the Court need not determine whether the ALJ erred in finding that Plaintiff could perform the jobs of assembler I or electronics worker. See Molina v. Astrue, 674 F.3d 1104, 1115-21 (9th Cir. 2012) (discussing harmless error principles); see also Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014) (holding that 25,000 national jobs presented "close call" but represented sufficient number of jobs to be "significant").

**B.**   **Subjective Symptom Testimony**

Plaintiff contends the ALJ failed to provide clear and convincing reasons to reject his subjective symptom testimony. See JS at 16-24.

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's

testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

In a January 2014 function report, Plaintiff claimed he had anxiety attacks and had issues with his back, right shoulder, left hand, and right foot. See AR 275. Plaintiff suffered from insomnia due to "excruciating" pain. AR 276. Plaintiff could walk for two minutes before needing to rest, had trouble paying attention, and was unable to do housework because he could not stand or bend over. See AR 278-79.

At the hearing, Plaintiff testified that he stopped working in 2011 after two of his sons were murdered. See AR 43-44. He testified to mood swings and anger issues, and alleged suffering from daily panic attacks and flashbacks. See AR 44-45. With respect to physical impairments, Plaintiff testified that he has pain in his neck, left wrist, and back. See AR 44-46. He explained that he has used a cane since 2011 and is unable to bend, crouch, or use stairs. See AR 45-47. Plaintiff opined that he could sit for 5-10 minutes at a time and stand/walk (with a cane) for 10 minutes at a time. See AR 47. He reported undergoing left carpal tunnel release but that his hand was still numb and could not be used. See AR 47-48. Plaintiff noted that he was recently referred to pain management. See AR 50. Plaintiff indicated that he lived alone, but had an in-home-car-provider that assisted him with making meals, household cleaning, and shopping. See AR 54-58.

The ALJ incorporated some but not all of Plaintiff's subjective limitations into the RFC. See AR 24-27. The ALJ concluded that his more extreme statements were not supported by the medical evidence and conflicted with Plaintiff's reports to physicians. See AR 25-27. The ALJ also observed that Plaintiff received conservative treatment for both his physical and mental impairments. See AR 26-27.

The ALJ gave specific, clear and convincing reasons for discounting Plaintiff's testimony. First, Plaintiff does not dispute the ALJ's finding that the objective medical evidence did not support Plaintiff's claims. Indeed, despite Plaintiff testifying to fairly extreme physical impairments, his treatment records and physical examination findings were largely unremarkable. See, e.g., AR 350, 366-67, 369-70, 376, 391, 394, 397. While Plaintiff correctly notes that a lack of objective medical evidence may not be the sole reason for discounting his credibility, it is nonetheless a legitimate and relevant factor to be considered. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Second, the ALJ correctly noted (and Plaintiff does not contest) that Plaintiff's subjective testimony contradicted reports he made to his treating physicians. A claimant's inconsistent or non-existent reporting of symptoms is competent evidence for an ALJ to consider when making a credibility assessment. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (upholding ALJ's credibility finding where claimant testified that he suffered from carpal tunnel syndrome but did not report any problems to his treating physician). For example, Plaintiff testified that despite undergoing carpal tunnel release surgery, his left hand was "totally numb" and he couldn't use it. AR 47-48. After his surgery, however, Plaintiff reported feeling "a lot better" and that he had "very little numbness." AR 26, 423. And Plaintiff did not report numbness or any other problems involving his left hand in the recent orthopedic treatment records with the same doctor who performed his carpal

tunnel surgery. See AR 26, 490 (February 2016 examination), 488 (March 2016 examination).

Third, the ALJ observed that Plaintiff's treatment had been conservative in nature. See AR 27. Specifically, the ALJ noted that Plaintiff complained of disabling pain in his neck, back, right shoulder, left wrist, and right foot, at one point grading his pain an 8 out of 10, yet received only conservative medication management in the form of Norco and Percocet. See AR 25-27 (citing AR 336, 365, 388-408, 465-81).

As evident from the briefing, the authority about whether use of narcotic pain medication by itself constitutes "conservative" treatment goes both ways. Compare Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications.") with Vuoso v. Colvin, 2016 WL 1071576, at *9 (C.D. Cal. Mar. 16, 2016) (upholding ALJ's finding that claimant's overall treatment was conservative where she was prescribed two narcotic medications but received no other pain-related treatment). Swinging this issue closer to Plaintiff's favor is the fact that his recent medical records document referral to pain management for a course of lumbar epidural injections, see AR 488, 490, which the ALJ noted in his decision, see AR 26.

Nevertheless, given the presence of two specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony, any error in discounting Plaintiff based on conservative treatment would be harmless. See Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding harmless error where ALJ relied on two invalid reasons for adverse credibility determination but remaining reasons were valid and supported by substantial evidence).

## III.  CONCLUSION

The decision of the Social Security Commissioner is AFFIRMED and this case is dismissed with prejudice.

Date: June 7, 2019

　　　　　　　　　　　　　　　　／s／
DOUGLAS F. McCORMICK
United States Magistrate Judge